UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

JERRY E. PETERSON,

       Plaintiff,

      v.                                    Civil No. 09-880-HA

                                        OPINION AND ORDER

MICHAEL J. ASTRUE,
Commissioner of Social Security,

       Defendant.

HAGGERTY, District Judge:

       Plaintiff Jerry E. Peterson seeks judicial review of a final decision by the Commissioner of the Social Security Administration denying his application for Disability Insurance Benefits (DIB). This court has jurisdiction to review the Commissioner's decision under 42 U.S.C. §

1- OPINION AND ORDER

405(g). For the following reasons, the Commissioner's decision is REVERSED and REMANDED for further proceedings.

## STANDARDS

To establish eligibility for benefits, a plaintiff has the burden of proving an inability to engage in any substantial gainful activity (SGA) "by reason of any medically determinable physical or mental impairment" that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). Additionally, for the purposes of DIB, a plaintiff has the burden of proving disability prior to the termination of his or her insured status. *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for benefits. 20 C.F.R. §§ 404.1520, 416.920.

First, the Commissioner determines whether the claimant is engaged in SGA. If the claimant is so engaged, disability benefits are denied.

If not, the Commissioner proceeds to the second step and determines whether the claimant has a medical impairment that meets the regulatory definition of "severe." 20 C.F.R. § 404.1520(a). If the claimant lacks this kind of impairment, disability benefits are denied. 20 C.F.R. § 404.1520(c).

If at least some of the claimant's impairments are severe, the Commissioner proceeds to the third step to determine whether the impairment or impairments are equivalent to one or more impairments that the Commissioner has recognized to be so severe that they are presumed to preclude SGA. *See* 20 C.F.R. § 404.1520(d). These are listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments or the Listings). The Listings describe impairments which

qualify as severe enough to be construed as *per se* disabling.  20 C.F.R. §§ 404.1525, 416.925; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).

The claimant has the burden of producing medical evidence that establishes all of the requisite medical findings for a listed impairment.  *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005); *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987).  If the claimant's condition meets or equals one in the Listing of Impairments, the claimant is presumed conclusively to be disabled.

If the impairment is not one that is presumed to be disabling, the Commissioner determines the claimant's residual functional capacity (RFC), which is the most an individual can do in a work setting despite the total limiting effects of all their impairments.  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), and Social Security Ruling (SSR) 96-8p.

The Commissioner then proceeds to the fourth step to determine whether the impairment prevents the claimant from engaging in work that the claimant has performed in the past.  If the claimant is able to perform his or her former work, a finding of "not disabled" is made and disability benefits are denied.  *See* 20 C.F.R. § 404.1520(e).

If the claimant is unable to perform work that he or she has performed in the past, the Commissioner proceeds to the final step and determines if the claimant can perform other work in the national economy in light of his or her RFC, age, education, and work experience.

In this five-step framework used by the Commissioner, the claimant has the burden of proof at steps one through four.  Accordingly, the claimant bears the initial burden of establishing his or her disability.

At the fifth step, however, the burden shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can perform given his

or her RFC, age, education, and work experience.  *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996).

If the Commissioner cannot meet this burden, the claimant is considered disabled for purposes of awarding benefits under the Act.  20 C.F.R. § 404.1520(f)(1).  If the Commissioner meets this burden, the claimant is deemed not disabled for purposes of determining benefits eligibility.  20 C.F.R. §§ 404.1566, 404.1520(g).

The Commissioner's decision must be affirmed if it is based on proper legal standards and its findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g); *Tackett*, 180 F.3d at 1097; *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  Substantial evidence is more than a scintilla but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (citation omitted).

The Commissioner's denial of benefits is upheld even if the evidence is susceptible to more than one rational interpretation, so long as one of the interpretations supports the decision of the Administrative Law Judge (ALJ).  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002); *Andrews*, 53 F.3d at 1039-40.

The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision.  *Tackett*, 180 F.3d at 1098.  The Commissioner, not the reviewing court, must resolve conflicts in the evidence, and the Commissioner's decision must be upheld in instances where the evidence supports either outcome.  *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003); *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1998).

However, a decision supported by substantial evidence must be set aside if the Commissioner did not apply the proper legal standards in weighing the evidence and making the decision. *Reddick*, 157 F.3d at 720.

## FACTS

Plaintiff was forty-two years old at his alleged disability onset date and was forty-eight years old at the time of the ALJ's decision. Plaintiff has a high school education with two years of college and past relevant work experience as a teacher's assistant.

Plaintiff protectively applied for DIB on May 18, 2006, alleging disability from multiple physical and mental impairments. The application was denied initially and upon reconsideration. The ALJ conducted a hearing on October 22, 2008, at which he heard testimony from plaintiff, who was represented by counsel, plaintiff's mother, Lillie Nielsen, and a vocational expert (VE).

On January 6, 2009, the ALJ issued a decision finding that plaintiff was not disabled as defined in the Social Security Act. The Appeals Council declined plaintiff's request for administrative review, making the ALJ's decision the final decision of the Commissioner. Plaintiff subsequently initiated this action seeking judicial review.

## SUMMARY OF ALJ'S FINDING

At step one, the ALJ found that plaintiff had not engaged in SGA since his alleged disability onset date. Tr. 15, Finding 2.[1]

At step two, the ALJ found that plaintiff has the following medically determinable severe impairments: morbid obesity, hypothyroidism, depression, and anxiety. Tr. 15, Finding 3.

---

[1] Tr. refers to the Transcript of the Administrative Record.

5- OPINION AND ORDER

At step three, the ALJ found that plaintiff's impairments, singly or in combination, did not meet or equal the requirements of any listed impairment. Tr. 15-17, Finding 4.

The ALJ determined that plaintiff has the RFC to "perform limited light work as defined in 20 C.F.R. 404.1567(b)." Tr. 17, Finding 5. The ALJ determined that plaintiff can lift twenty pounds occasionally and ten pounds frequently, stand for no more than two hours, walk for no more than one hour and for not more than one block at a time, and must be able to use his assistive device for walking. *Id*. The ALJ found that plaintiff must be given the option to sit, stand, and change positions at will. *Id*. Plaintiff can occasionally bend, stoop, and crouch, but cannot engage in work that requires climbing, balancing, kneeling, or crawling. *Id*. The ALJ also determined that plaintiff cannot work in hazardous environments, including extreme heat, humidity, or vibration. *Id*. Due to the combination of his physical and mental impairments, the ALJ found that plaintiff is limited to simple, routine, and repetitive tasks. *Id*.

At step four, the ALJ found that plaintiff is unable to perform his past relevant work as a teacher's assistant for a special education program. Tr. 21, Finding 6.

At step five, the ALJ, after consulting with the VE, found that there are jobs that exist in significant numbers in the national economy that plaintiff could perform. Tr. 22, Finding 10.

## DISCUSSION

Plaintiff contends that this court should reverse and remand the Commissioner's final decision for further findings or for an award of benefits due to a number of alleged errors, including: (1) improperly finding plaintiff's osteoarthritis and back pain non-severe impairments at step two; (2) improperly finding plaintiff's obesity did not equal a listed impairment; and (3) providing an incomplete hypothetical question to the VE.

**1.      Plaintiff's osteoarthritis and back pain**

6- OPINION AND ORDER

Plaintiff asserts that the ALJ erred at step two when he construed plaintiff's complaints of osteoarthritis and lower back pain as non-severe impairments. Plaintiff argues that the ALJ improperly rejected objective medical evidence from plaintiff's treating physicians and plaintiff's testimony in determining that plaintiff's osteoarthritis and lower back pain were non-severe. This court disagrees.

An impairment may be construed as non-severe only if the evidence establishes that it "has no more than a minimal effect on an individual's ability to work." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (citation omitted). If the ALJ cannot clearly determine the effect of the impairment on the claimant's ability to complete work activities, then the evaluation should not end at the step two finding of a non-severe impairment. *Id.* at 687. However, if the ALJ finds the impairment to be non-severe based on "clearly established medical evidence," and substantial evidence supports that conclusion, the reviewing court should not disturb the non-severe finding. *Id.*

An ALJ may reject the contradicted opinion of a treating or examining physician by stating specific and legitimate reasons, and may reject an uncontradicted opinion from a treating or examining physician by providing clear and convincing reasons, supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). An ALJ must give weight not only to the treating physician's clinical findings and interpretation of test results, but also to the doctor's subjective judgments. *Lester v. Chater*, 81 F.3d 821, 832-33 (9th Cir. 1995) (citation omitted).

Additionally, an ALJ need not believe every allegation of disabling pain or functional limitation advanced by a claimant. *See Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). Instead, a two-step analysis applies at the administrative level when considering a claimant's

7- OPINION AND ORDER

subjective credibility.  At step one, "the claimant 'must produce objective medical evidence of an underlying impairment' or impairments that could reasonably be expected to produce some degree of symptom," and "if the claimant meets this threshold and there is no affirmative evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'"  *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281-84 (9th Cir. 1996)); s*ee also* SSR 96-7p ("[ALJ's decision] must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight.").

The ALJ may consider many factors in weighing a claimant's credibility, including ordinary techniques of credibility evaluation (such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid) and inadequately explained failures to seek treatment or to follow a prescribed course of treatment.  *Smolen*, 80 F.3d at 1284.  A claimant's statements cannot be rejected solely because the testimony is viewed as unsubstantiated by the available objective medical evidence.  20 C.F.R.§§ 404.1529(c)(2); 416. 929(c)(2).  However, if the ALJ's finding is supported by substantial evidence, the court "may not engage in second-guessing."  *Thomas*, 278 F.3d at 959.

In this case, the ALJ found at step two that plaintiff's complaints of high blood pressure, high cholesterol, mild osteoarthritis, and seasonal allergies were not severe impairments because "nothing [shows that] these are more than transient or cause significant vocational limitations."  Tr. 15.  The ALJ considered each of these impairments individually and in conjunction with plaintiff's severe impairments.  *Id.*  The ALJ rejected plaintiff's testimony regarding the severity

8- OPINION AND ORDER

of his pain complaints based on plaintiff's lack of treatment and follow-through. Tr. 19. Specifically, the ALJ noted that plaintiff was never prescribed any pain medication by his physicians and only occasionally used Tylenol. Id.

Plaintiff was seen by several treating physicians for his complaints of lower back and right hip pain. Tr. 146-67. In 2002, plaintiff was treated for a lower back spasm after pulling a lawn mower. Tr. 152. The doctor noted that plaintiff's range of motion was limited more by his obesity than the spasm. Id. On March 12, 2004, Dr. Winjum noted that plaintiff had tenderness in his back following a drive from Florida, so he prescribed anti-inflammatories and a muscle relaxant. Tr. 147. On September 1, 2004, Dr. Norris opined that plaintiff could have sciatica based on plaintiff's complaints of right hip pain, and he prescribed prednisone. Tr. 148, 164.

On September 23, 2004, plaintiff saw his primary care physician, Dr. Barth, complaining of intense throbbing and aching right hip pain for six weeks. Tr. 164. Dr. Barth observed that plaintiff had difficulty abducting and adducting his right leg more than twenty degrees. Tr. 164. Dr. Barth ordered an x-ray and prescribed a narcotic pain reliever. Id.

On September 29, 2004, plaintiff again complained of right hip pain to an orthopedist. Tr. 156. The physical exam showed that plaintiff had significant pain on internal rotation of his hip and the x-ray revealed mild osteoarthritis with minor spurring. Tr. 156, 161, 165. The physician recommended an MRI, but plaintiff never underwent the procedure because his pain diminished the next week. Tr. 161. During a follow-up visit with Dr. Barth on April 11, 2006, plaintiff reported that his arthritis pain had improved, and no treatment was given. Tr. 161. It

does not appear that plaintiff complained of lower back or hip pain at any of his other medical visits.[2]  Tr. 198-217.

Consultative evaluator Dr. Robert Irwin examined plaintiff on July 11, 2006.  Tr. 168. Plaintiff reported that he had arthritis of the right hip and low back pain about two to three times per month with no radiation.  *Id.*  Plaintiff told Dr. Irwin that his lower back pain is increased by walking, and it limits his ambulation.  Tr. 168-69.  Upon physical examination, Dr. Irwin found that plaintiff's back was "notably nontender."  Tr. 171.  Doctor Irwin was primarily concerned with plaintiff's marked obesity and believed that plaintiff's hip pain, back pain, and sciatica were exacerbated by his obesity.  Tr. 172.

Based upon the record, this court finds that substantial evidence supported the ALJ's finding that plaintiff's hip and back pain were non-severe impairments.  Giving proper weight to all of the physicians' opinions regarding plaintiff's pain level and abilities, plaintiff's hip and back pain were not severe enough to have more than a minimal effect on his ability to work.  The clearly established medical evidence shows that plaintiff suffered from pain in his hip and back over the years, but that the symptoms were transitory and had improved to a point where he no longer required treatment.  Therefore, substantial evidence supported the ALJ's step two finding and this court must affirm that determination.

**2.     Plaintiff's obesity**

Plaintiff asserts that the ALJ erred at step three in his finding that plaintiff's severe impairment of obesity did not meet or equal a listed impairment.  At the time of the hearing,

---

[2] The only mention of plaintiff's pain complaints after 2004 is a single listing on the Clackamas County Community Health record in 2007 that lists arthritis of the hips as an "ongoing problem."  Tr. 233.

plaintiff was six feet tall and weighed 520 pounds. Tr. 28. He testified that he weighed 480 pounds at the time of his alleged onset date. Tr. 29.

The ALJ determined that plaintiff's obesity could reasonably be expected to cause some symptoms, but rejected plaintiff's testimony as to the intensity, persistence, and limiting effects of those symptoms. Tr. 18. The ALJ cited plaintiff's lack of treatment, lack of follow-up, and his conservative treatment history as reasons for rejecting plaintiff's complaints. Tr. 19. This court finds that the ALJ's stated reasons were insufficient to discredit plaintiff's testimony.

In 2000, the Social Security Administration removed obesity from the listing of impairments, but reaffirmed that the effects of obesity should be considered within the disability analysis. SSR 02-1p. The new rule stated:

> As with any other medical condition, we will find that obesity is a "severe" impairment when, alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities. . . . We will also consider the effects of any symptoms (such as pain or fatigue) that could limit functioning. . . .
>
> There is no specific level of weight or BMI that equates with a "severe" or a "not severe" impairment. Neither do descriptive terms for levels of obesity (e.g., "severe," "extreme," or "morbid" obesity) establish whether obesity is or is not a "severe" impairment for disability program purposes. Rather, we will do an individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe.

SSR 02-1p.

A claimed impairment must meet all of the specified medical criteria to meet or equal a listed impairment. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). If the impairment manifests only some of the criteria, no matter how severely, it cannot meet or equal a listed impairment. *Id.* (citing SSR 83-19). Obesity is usually considered in combination with other impairments,

11- OPINION AND ORDER

but it can also be medically equivalent to a listed impairment in of itself if the obesity "results in an inability to ambulate effectively." SSR 02-1p.

To obtain benefits for the alleged impairment, a claimant "must follow treatment prescribed by his or her physician if the treatment can restore the ability to work, unless the individual has an acceptable reason for failing to follow the prescribed treatment." *Orn v. Astrue*, 495 F.3d 625, 636-37 (9th Cir. 2007) (citing SSR 02-1p). However, courts should rarely use a claimant's failure to follow prescribed treatment for obesity as a reason to deny benefits unless the treatment is clearly expected to be successful. *Id.* at 637. Unlike complaints of disabling pain, a claimant's failure to seek or follow treatment for obesity is not instructive of a claimant's credibility. *Id.* at 638.

In this case, the ALJ rejected plaintiff's complaints related to his obesity because: "[Plaintiff] was encouraged to start a dietary regimen and to exercise at least two times per day, but the claimant has not followed this recommendation. Gastric bypass surgery has also been discussed with the claimant, but he has not pursued this recommendation either." Tr. 19. These are insufficient reasons for rejecting his testimony.

Nothing in the record establishes that a diet and exercise plan was prescribed to plaintiff or that any treatment would clearly be successful for his morbid obesity. In 2004, Dr. Winjum noted that he discussed diet and exercise with plaintiff, but never formally recommended any treatment to plaintiff. Tr. 147. Doctor Norris also discussed plaintiff's obesity with him and the possibility of bypass surgery, but did not encourage plaintiff to follow-up. Tr. 148. Later in 2008, plaintiff's physicians at Willamette Falls Hospital counseled him to decrease his weight and obtain a healthy lifestyle. Tr. 215. Plaintiff was also "encouraged" to exercise to reduce his risk of cardiovascular disease, but never prescribed a specific course of treatment. Tr. 216.

12- OPINION AND ORDER

Based on the record, the ALJ's decision to discredit plaintiff's testimony because of his lack of treatment was legal error.

Moreover, an examination of the record illustrates the seriousness of plaintiff's obesity. During plaintiff's disability report in May 2006, the interviewer observed that plaintiff could barely walk and cannot bend. Tr. 90. Plaintiff's doctors have repeatedly noted his difficulty in ambulating, decreased mobility, and exacerbated pain due to his obesity. Tr. 152, 156, 164, 172. Additionally, plaintiff's testimony shows that his obesity causes problems with personal hygiene that would make it difficult for plaintiff to find and maintain work. Tr. 100.

The ALJ's error in rejecting plaintiff's complaints related to his obesity requires reversal. The ALJ should give proper weight to plaintiff's testimony and discuss on the record whether his difficulty in ambulating causes plaintiff's obesity to meet or equal a listed impairment.

### 3.    VE Testimony

Finally, plaintiff argues that the ALJ erred in failing to present a proper hypothetical question to the VE. For the reasons previously stated, the ALJ failed to properly credit plaintiff's testimony. The ALJ should have incorporated plaintiff's complaints regarding his obesity into the hypothetical question proposed to the VE. This court is confident that this issue will be addressed properly during further proceedings.

As noted above, once a claimant shows that he cannot perform past relevant work, the burden shifts to the Commissioner to show that the claimant can engage in SGA. The Commissioner "can meet this burden by propounding to a vocational expert a hypothetical question that reflects all the claimant's limitations." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995). The ALJ must then determine whether the claimant can find work in the national

economy. The ALJ's determination must be supported by substantial evidence. *Tackett*, 180 F.3d at 1097.

The VE testimony here falls short of substantial evidence. The question failed to include plaintiff's obesity and its accompanying restrictions. Upon remand, the VE shall properly consider all of plaintiff's limitations.

**4.    Remand**

A remand for further proceedings is unnecessary if the record is fully developed, and it is clear from the record that the ALJ would be required to award benefits. *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). The decision whether to remand for further proceedings turns upon the likely utility of such proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). In this matter, this court concludes that outstanding issues remain that must be resolved before a determination of disability can be made.

Upon remand, the ALJ shall credit plaintiff's testimony about his obesity and accompanying restrictions in accordance with the guidance above when determining whether plaintiff's impairment meets or equals a listing. The ALJ shall also question a VE in conformity with plaintiff's obesity restrictions.

**CONCLUSION**

For the reasons provided, this court concludes that pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner denying Jerry E. Peterson's application for disability benefits must be REVERSED and REMANDED FOR FURTHER PROCEEDINGS consistent

with this ruling and the parameters provided herein.

    IT IS SO ORDERED.

    DATED this  22  day of September, 2010.

                                                      /s/ Ancer L. Haggerty
                                                         Ancer L. Haggerty
                                                  United States District Judge